# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

SHELAINE JORDAN COLEMAN,      *
                             *
    Plaintiff,           *
                             *
vs.                          *      CIVIL ACTION NO. 18-00279-B
                             *
ANDREW M. SAUL,[1]           *
Commissioner of Social Security, *
                             *
    Defendant.           *

## ORDER

Plaintiff Shelaine Jordan Coleman (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* On April 5, 2019, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

## I.  **Procedural History**[2]

Plaintiff filed her application for benefits on April 6, 2015, alleging disability beginning October 26, 2013, based on back problems/bulging disc/degenerative disc disease, Sjogren syndrome, high blood pressure, diabetes, and arthritis. (Doc. 13 at 176, 188, 192).  Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge L. Dawn Pischek (hereinafter "ALJ") on December 5, 2016. (Id. at 42).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 45).  A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 57).  On June 22, 2017, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 15).  The Appeals Council denied Plaintiff's request for review on Aril 26, 2018. (Id. at 5).  Therefore, the ALJ's decision dated June 22, 2017, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1).  The parties waived oral argument on April 5, 2019. (Doc. 18).  This case is now ripe for judicial review and is properly before this Court pursuant to 42

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

1. Whether substantial evidence supports the ALJ's finding that Plaintiff's progressive supranuclear palsy ("PSP") was non-severe?

2. Whether substantial evidence supports the ALJ's assignment of weight to the opinions of Plaintiff's treating physicians?

3. Whether substantial evidence supports the Residual Functional Capacity ("RFC")?

## III. Factual Background

Plaintiff was born on August 14, 1965, and was fifty-one years of age at the time of her administrative hearing on December 5, 2016. (Doc. 13 at 42, 188). Plaintiff graduated from high school and completed training to be a certified nursing assistant (CNA). (Doc. 13 at 46).

Plaintiff last worked from 1992 to 2009 as a certified nursing assistant. (Doc. 13 at 46, 207). Prior to that, she worked from 1987 to 2003 as a sewing machine operator making military garments. (Id. at 47).

Plaintiff testified that, as of her date last insured (December 31, 2014), she can no longer work due to arthritis in her fingers and hands, tremors in her fingers and body from Parkinson's disease, and inability to pick up her legs because of Sjogren's arthritis. (Id. at 47-48). Her medical treatment has consisted of medications such as Sinemet and Ativan for Parkinson's disease and Celebrex and

Methotrexate for Sjogren's arthritis, as well as a cane as an assistive device. (Id. at 48, 54).

## IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986);

---

[3] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

<u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.   <u>Statutory and Regulatory Framework</u>**

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); <u>see also</u> 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.  20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  <u>Jones v. Bowen</u>, 810 F.2d 1001,

1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.  Discussion**

> **A. Any error in the ALJ's finding that Plaintiff's progressive supranuclear palsy (PSP) was a non-severe impairment was harmless.**

In her brief, Plaintiff argues that the ALJ erred in finding that her progressive supranuclear palsy (PSP) was not a severe

impairment.[4]  (Doc. 14 at 7).  The Commissioner counters that the ALJ's finding that Plaintiff did not have the severe impairment of PSP *during the period in question* (October 26, 2013, through December 31, 2014) is supported by substantial evidence.  (Doc. 15 at 4).  Having carefully reviewed the record in this case, the Court finds that Plaintiff's claim is without merit.

In order for an impairment to be severe, it must be more than a slight abnormality or a combination of slight abnormalities "that causes no more than *minimal* functional limitations." 20 C.F.R. § 416.924(c) (emphasis added).  Indeed, it must "*significantly* limit[]" an individual's "ability to do *basic work activities*." 20 C.F.R. § 416.920(c) (emphasis added).  "It is [the] Plaintiff's burden to prove the existence of a severe impairment, and she must do that by showing an impact on her ability to work." Marra v. Colvin, 2013 U.S. Dist. LEXIS 105669, *13-14, 2013 WL 3901655, *5 (M.D. Fla. 2013) (citing Bowen v.

---

[4] According to Plaintiff, "progressive supranuclear palsy" (PSP), "is a rare neurodegenerative disease that is often misdiagnosed as Parkinson's disease because its symptoms are similar. PSP develops because of the deterioration of brain cells in a few small but very important areas at the base of the brain. The beginning stages of PSP include the inability to walk, falling spells, and stiffness. Other common symptoms of PSP include forgetfulness, change in personality, and loss of interest in usual socializing with family and friends. The word 'progressive' was included in the palsy's name, because symptoms typically progressively worsen for a patient. https://www.webmd.com/parkinsonsdisease/progressive-supra nuclear-palsy-psp#1." (Doc. 14 at 8).

Yuckert, 482 U.S. 137, 146 (1987)); see also Barnhart v. Thomas, 540 U.S. 20, 24 (2003) ("At step two, the SSA will find nondisability unless the claimant shows that he has a 'severe impairment,' defined as 'any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities.'") (quoting §§ 404.1520(c), 416.920(c)).

At the outset, the Court notes that, even if Plaintiff's PSP was a severe impairment prior to the date last insured (December 31, 2014), the ALJ's failure to classify it as a severe impairment at step two of the sequential evaluation process is not fatal. See Tuggerson-Brown v. Commissioner of Soc. Sec., 572 Fed. Appx. 949, 951 (11th Cir. 2014) (per curiam) (unpublished) ("[W]e have recognized that step two requires only a finding of 'at least one' severe impairment to continue on to the later steps. See Jamison, 814 F.2d at 588. Further, the regulations state that the only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability. See 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ found multiple severe impairments and accordingly proceeded to step three of the evaluation. Based on our precedent and the regulations, therefore, it is apparent that there is no need for an ALJ to identify every severe impairment at step two. Accordingly, even assuming that Tuggerson-Brown is correct that her additional

impairments were 'severe,' the ALJ's recognition of that as a fact would not, in any way, have changed the step-two analysis, and she cannot demonstrate error below."); Bennett v. Astrue, 2013 U.S. Dist. LEXIS 115951, *14, 2013 WL 4433764, *5 (N.D. Ala. 2013) ("'[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe' and, even if the ALJ erred by not recognizing every severe impairment, the error was harmless since he found at least one such impairment."); Ferguson v. Astrue, 2012 U.S. Dist. LEXIS 139135, *25, 2012 WL 4738857, *9 (N.D. Ala. 2012) ("[B]ecause step two only acts as a filter to prevent non-severe impairments from disability consideration, the ALJ's finding of other severe impairments allowed him to continue to subsequent steps of the determination process and his failure to list headaches as severe does not constitute reversible error because, under the Social Security regulations, the ALJ at later steps considers the combined effect of all the claimant's impairments.").

In the instant case, the ALJ found at step two of the evaluation process that Plaintiff has the severe impairments of degenerative disc disease, left shoulder impingement, hypertension, Sjogren's syndrome, fibromyalgia, undifferentiated connective tissue disease, diabetes, obesity, depression, anxiety, and chronic pain syndrome. (Doc. 13 at 17). The ALJ then proceeded with the subsequent steps of the determination process and rendered an RFC

finding, based on the record as a whole. Therefore, even if the ALJ should have found this additional impairment to be severe at step two, the error was harmless and provides no basis for remand.[5] See Gray v. Commissioner of Soc. Sec., 550 Fed. Appx. 850, 853-54 (11th Cir. 2013); Packer v. Commissioner, Soc. Sec. Admin., 542 Fed. Appx. 890, 892 (11th Cir. 2013); Heatly v. Commissioner of Soc. Sec., 382 Fed. Appx. 823, 824-25 (11th Cir. 2010). For this reason, Plaintiff's claim must fail.

### B. Substantial evidence supports the ALJ's assignment of weight to the opinions of Plaintiff's treating physicians.

Next, Plaintiff argues that the ALJ erred in assigning "little weight" to the opinions of her treating physicians, Dr. Daniel Dees, M.D., and Dr. Tim Revels, M.D. (Doc. 14 at 12). The Government counters that the ALJ assigned the proper weight to Dr. Dees' opinions because they related to Plaintiff's medical condition *after* the date last insured and did not relate back to the relevant

---

[5] Plaintiff acknowledges that she was not diagnosed with either PSP or possible Parkinson's disease until *after* the date last insured (December 31, 2014) when she began seeing Dr. Dees, a neurologist, in June 2015 and complained, for the first time, of tremors and loss of balance and was diagnosed, for the first time, with possible Parkinson's disease. (Doc. 13 at 18; Doc. 14 at 8). Plaintiff argues, however, that she reported a history of symptoms to Dr. Dees that extended back during the period in question, and, thus, the ALJ should have found her Parkinson's/PSP to be a severe impairment during the period in question. (Doc. 14 at 8). In any event, even assuming that to be true, Plaintiff agrees that any error by the ALJ in failing to find her PSP to be severe during the period in question is harmless and does not necessitate reversal. (Doc. 14 at 11-12).

10

period, and to Dr. Revels' opinions because they were inconsistent with his own treatment records, as well as the relevant medical evidence as a whole. (Doc. 15 at 9-10). Having reviewed the record at length, the Court finds that Plaintiff's claims are without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). Also, an ALJ is "required to

consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

As discussed, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease, left shoulder impingement, hypertension, Sjogren's syndrome, fibromyalgia, undifferentiated connective tissue disease, diabetes, obesity, depression, anxiety, and chronic pain syndrome.  However, the ALJ found that Plaintiff still has the RFC to perform a range of light work with the following restrictions: Plaintiff cannot reach overhead with her left upper extremity. She can frequently reach overhead with her right upper extremity and frequently reach in other directions bilaterally.  She cannot climb ladders, ropes, or scaffolds or work at unprotected heights or around hazardous machinery.  She can occasionally climb ramps and stairs, occasionally operate foot controls, and occasionally stoop, kneel, and crouch.  She can tolerate occasional exposure to extreme heat, cold, and humidity.  She can frequently handle and finger.  She needs to be allowed to alternate between sitting and standing every hour without leaving the workstation.  She can perform simple routine tasks in two-hour increments with normal breaks for the duration of an 8-hour workday (defining normal breaks as a 15-minute break in the morning, a 30-minute lunch, and a 15-minute break in the afternoon).  (Doc. 13 at 17, 20).

Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff is not able to perform her past relevant work as a CNA or sewing machine operator, but she can perform other

work such as assembler, microfilm processor, and laundry folder (all light and unskilled). (Id. at 25-26). Thus, the ALJ found that Plaintiff is not disabled. Having reviewed the evidence at length, the Court is satisfied that the ALJ's findings related to the weight accorded to the opinions of Plaintiff's treating physicians are supported by substantial evidence.

First, with respect to Plaintiff's treating neurologist, Dr. Daniel Dees, M.D., the record shows, as the ALJ found, that Plaintiff did not begin seeing Dr. Dees until June 23, 2015, some six months *after* the date last insured (December 31, 2014). (Doc. 13 at 374). On that occasion, Plaintiff complained, *for the first time*, of bilateral upper extremity tremor and loss of balance.[6] (Id. at 374-75). Dr. Dees' examination findings on that date reflect bilateral upper extremity slowness and rigidity, bilateral hand twitching, mild chin and tongue tremor, normal gait, normal neurological examination, normal motor strength and tone of upper and lower extremities, normal coordination, and normal deep tendon reflexes. (Id. at 376-77). Dr. Dees diagnosed Plaintiff with possible Parkinson's Plus Syndrome, abnormality of gait, and REM sleep behavior disorder, for which he recommended a cane, as needed,

---

[6] As previously discussed, Plaintiff reported to Dr. Dees that she had a history of tremor and imbalance for the previous one and a half years. (Doc. 13 at 375, 465). However, the record contains no evidence that Plaintiff ever complained to any of her medical providers about these symptoms prior to the date last insured.

and medication. (Id. at 374). Plaintiff did not return to Dr. Dees for more than one year. On August 26, 2016, Plaintiff presented to Dr. Dees again with complaints of imbalance and tremor, at which time Dr. Dees diagnosed her with progressive supranuclear palsy, noting improvement of symptoms with prescribed medication, abnormalities of gait, and "stable" REM sleep behavior disorder.[7] (Id. at 464). Dr. Dees' physical examination on that occasion revealed normal musculoskeletal exam, normal tone, no atrophy, 5/5 muscle strength, and normal neurological function. (Id. at 464, 467). On December 14, 2016, *two years after the date last insured*, Dr. Dees completed a Physical Capacities Evaluation form opining that Plaintiff is unable to perform even sedentary work for a full eight-hour workday due to progressive supranuclear palsy.[8] (Id. at 463). The ALJ assigned little weight to Dr. Dees' opinion, as it was dated *two years after the date last insured*; Plaintiff was not diagnosed with possible Parkinson's disease or progressive supranuclear palsy until six months after the date last insured; and Plaintiff never mentioned any symptoms related to these conditions during the period in question.[9] (Id. at 23). The record,

---

[7] Dr. Dees also noted that an MRI of Plaintiff's brain was normal. (Doc. 13 at 465).

[8] There are no examination findings or treatment notes associated with the date that Dr. Dees rendered his opinions. (Doc. 13 at 463).

[9] For example, Plaintiff reported to her rheumatologist, Dr. Yanming Xing, M.D., for the first time on March 8, 2016, that she was seeing

as detailed above, confirms the ALJ's findings that the limitations opined by Dr. Dees related to her condition after the date last insured. Accordingly, for each of these reasons, the ALJ had good cause to discredit Dr. Dees' opinions.

Further, with respect to Plaintiff's treating orthopedic surgeon, Dr. Tim Revels, M.D., Plaintiff's treatment records show that Dr. Revels treated Plaintiff from March 2009 to June 2010 for lumbar stenosis, lumbar radiculopathy, herniated disc, and low back pain. (Doc. 13 at 379, 392, 459). On August 31, 2009, Dr. Revels performed a successful L2-L5 laminectomy and decompression, after medication failed to provide sufficient pain relief for Plaintiff's herniated disc. (Id. at 379, 384, 392-95). Following her surgery, Plaintiff reported on September 15, 2009, that her pain was "much better" and that she had "no radiculopathy." (Id. at 396). Similarly, at her follow-up examinations in October and November 2009, Plaintiff reported that her back pain was "much better" and she had "very little" radiculopathy, with only "slight discomfort" in her left thigh and "slight pain" in her left shoulder. (Id. at 397-98). Dr. Revels further noted "good range of motion" in Plaintiff's left shoulder, although there were some signs of impingement on internal rotation, for which he administered an

_____

a neurologist for tremor. (Doc. 13 at 314, 509, 517). Plaintiff did not report a history of tremor to Dr. Xing until one year and three months *after* the date last insured, despite seeing Dr. Xing regularly for polyarthralgia/Sjogren's since March 2015. (Id.).

injection.  (Id.).  The record shows that Plaintiff's final examination by Dr. Revels was on April 8, 2010, at which time Plaintiff reported no shoulder pain, that her back pain was "much better," and that she was experiencing radiculopathy in her thigh, which she described as a muscle spasm.  (Id. at 400).  Dr. Revels' physical examination findings on that date reflected "good strength to bilateral lower extremities;" "reflexes intact;" and "no changes in her gait."  (Id. at 400).  Dr. Revels' treatment plan was to continue her medications and consider an epidural block if her pain did not improve.  (Id.).  Plaintiff did not return to Dr. Revels for treatment after that date.

AS discussed by the ALJ, despite Dr. Revels' largely normal examination findings and noted significant improvement in symptoms, he completed disability insurance forms for Plaintiff on January 6, 2010, and June 23, 2010, opining that she could only occasionally reach above her shoulder, occasionally reach below the waist, and frequently reach at waist level; sit, stand, and walk for only four to six hours total in a workday; and never bend at the waist, kneel, or crouch because of her lumbar degenerative disc disease.  (Id. at 455-60).  Dr. Revels further opined that these limitations were "permanent."  (Id. at 460).  The ALJ assigned little weight to Dr. Revels' opinions, finding them inconsistent with his own treatment notes, as well as the other substantial medical evidence related to the period in question.  Indeed, the record confirms that Plaintiff

complained of only *slight* pain in her *left* shoulder; Dr. Revels noted "good range of motion" in her left shoulder; Dr. Revels noted "signs of impingement" in her left shoulder only; and Plaintiff never complained to Dr. Revels about her shoulder after she received the injection in November 2009.[10] (Id. at 397-400). Yet, Dr. Revels opined that Plaintiff was *permanently* limited in her ability to reach *bilaterally.* Because this opinion is inconsistent with the substantial medical evidence detailed above, the ALJ had good cause to discredit it.[11]

Likewise, with respect to Dr. Revels' opinion that Plaintiff could only sit, stand, and walk for four to six hours total in a workday and never bend at the waist, kneel, or crouch because of her lumbar degenerative disc disease, the record confirms that, following her surgery, Plaintiff repeatedly reported that her back pain and radiculopathy were "much better," and Dr. Revels treated her complaints of "slight" shoulder pain conservatively, with medication and injections, and never recommended additional surgery

---

[10] The next reference to Plaintiff's shoulder pain in the record appears in October 2013, when Plaintiff sought treatment at Franklin Primary Health Center for a pap test, and her list of assessments included shoulder pain. (Doc. 13 at 292). Notably, no complaint of shoulder pain was noted, and Plaintiff's musculoskeletal examination findings on that occasion were completely normal. (Id.).

[11] The Court notes that the ALJ accommodated any limitations caused by Plaintiff's left shoulder pain/impingement by restricting the RFC to light work and no overhead reaching with her left upper extremity. (Doc. 13 at 20).

for her back or any type of surgical procedure for her shoulder. (Id. at 396-400). Because the severity of the limitations opined by Dr. Revels in the disability insurance forms related to Plaintiff's back are inconsistent with his own treatment records, the ALJ had good cause to discredit those opinions, as well.[12]

The record also contains the treatment records of Dr. Bernita Mims, M.D., at the Franklin Primary Health Center, which reflect that in September, November, and December 2014, and January and February 2015, Plaintiff's back pain and arthralgias were "stable;" her "symptoms [were] relieved by pain meds/drugs;" and her musculoskeletal examination findings were normal, except for occasional "tenderness" in the lumbar spine. (Id. at 267-80, 283-84). As discussed by the ALJ, despite Dr. Mims' largely normal examination findings and documentation that Plaintiff's back pain and arthralgias were "stable" and "relieved" by medication, Dr. Mims completed a Medical Source Statement at Plaintiff's request on December 11, 2014, opining that Plaintiff could stand for *zero* minutes at a time, sit for fifteen minutes at a time, lift *no amount* of weight, and work zero hours in one day. (Doc. 13 at 260). The

---

[12] The Court notes that the ALJ accommodated any possible limitations caused by Plaintiff's back pain by restricting the RFC to light work with no climbing of ladders, ropes, or scaffolds, no work at unprotected heights or around hazardous machinery, only occasional climbing of ramps and stairs, only occasional operation of foot controls, and only occasional stooping, kneeling, and crouching, with accommodation for alternating between sitting and standing every one hour without leaving the workstation. (Doc. 13 at 20).

ALJ assigned little weight to Dr. Mims' opinions, given the inconsistency of the opinions with the substantial medical evidence, including Dr. Mims' own treatment records. Based on the record evidence detailed above, the ALJ had good cause to discredit Dr. Mims' opinions.[13]

Plaintiff also references the treatment records of her rheumatologist, Dr. Yanming Xing, M.D., who treated Plaintiff from March to September 2015, which was after the date last insured. Dr. Xing's physical examination findings reflect that Plaintiff had 5/5 muscle strength in all four extremities, normal range of motion in her shoulders, and only occasional tenderness to palpation in left wrist, lumbar spine, right hip, and right thigh. (Doc. 13 at 311-12, 495, 503, 512). Dr. Xing further noted that Plaintiff was

---

[13] The ALJ also assigned little weight to the opinion of Dr. Otis Harrison, M.D., another physician at Franklin Primary Health Center, who opined in a Medical Source Statement dated September 3, 2013, that Plaintiff could only stand or sit for one hour at a time, could only lift five pounds occasionally, would be absent from work more than ten days a month, and could not "maintain employment of any capacity" due to degenerative disc disease in her thoracic and lumbar spine. (Doc. 13 at 257-58). Despite the severity of Dr. Harrison's opinions, there are no records showing that he ever examined Plaintiff. Rather, Plaintiff's treatment records from Franklin Primary Health reflect that she was treated and examined by Dr. Mims and Nurse Jamison, a CNRP. (Id. at 267-300). In any event, as with the opinion evidence from Dr. Mims, the extreme limitations set forth by Dr. Harrison in the Medical Source Statement are inconsistent with the largely normal physical examination findings of Plaintiff's treating physicians during the period in question and with the conservative treatment of Plaintiff's back problems by her treating physicians, as set forth in detail above. Accordingly, the ALJ had good cause to discredit Dr. Harrison's opinions.

feeling better on her new medication regimen (id. at 309, 312, 492, 495, 500), and x-rays of Plaintiff's hands, feet, chest, and pelvis were normal, as was all lab work.  (Id. at 495, 503).

Plaintiff also references the treatment records of her pain management physician, Dr. Theodore Kopp, M.D., who began treating her five months after the date last insured.  (Id. at 344).  On May 21, 2015, Dr. Kopp ordered nerve conduction studies, which were normal.  (Id. at 344).  Imaging of Plaintiff's lumbar spine taken at that time showed multilevel degenerative changes with Grade I spondylolisthesis at L4-5.  (Id. at 348).  On May 11, 2015, Plaintiff reported a pain level of 10/10 for a duration of one month.  (Id. at 349).  Dr. Kopp's physical examination findings on that date reflected moderate antalgic gait, mild accentuation of the normal lordosis of the lumbar spine, tenderness in midline at L4 (mild) and L5 (moderate), restricted range of motion, normal reflexes, positive straight leg raise, normal SI joint, and muscle strength 5/5 bilaterally.  (Id. at 351-52).  Dr. Kopp assessed lumbar radiculopathy, right L5/S1, for which he prescribed pain medication as needed and home exercise.  (Id. at 353).  Dr. Kopp noted his plan to treat conservatively, to consider injections, and to counsel Plaintiff on nutrition, exercise, and pain relieving modalities.  (Id. at 354).  At a follow up examination in October 2015, Dr. Kopp noted that Plaintiff was "much improved after [physical therapy]" and "ESI," which "improved her pain

significantly." (Id. at 409-13).  From June to October 2016, Dr.
Kopp repeatedly documented normal musculoskeletal findings,
including normal strength and tone, normal extremities with no
swelling, normal gait and station, "ambulating with no assistive
devices," normal sensation, normal coordination, normal reflexes,
normal straight leg raise, no tenderness of lumbar spine, active
range of motion of lumbar spine, and 5/5 motor strength.[14]  (Id. at
417, 429, 434).

The record also contains the RFC assessment of State Agency
reviewer, Dr. Howard C. Harper, Jr., M.D., in which he opined that,
during the period in question, Plaintiff was able to perform a
reduced range of light work.  The ALJ assigned Dr. Harper's opinion
partial weight, finding that it was generally consistent with the
record, but, based on additional evidence received at the hearing
level, Plaintiff had somewhat greater, but not disabling,

_____

[14] In her brief, Plaintiff also references the Physical Capacities
Evaluation and Clinical Assessment of Pain forms completed by her
treating physician, Dr. Steve Donald, M.D., in June 2016, a year
and a half after the date last insured, in which he opined, among
other things, that Plaintiff can only sit, stand, or walk for one
hour in an eight-hour workday and cannot perform everyday work
activities because of her pain and medication side effects.  (Doc.
13 at 545-46).  As the ALJ found, these opinions were not related
to the period in question and were, in any event, inconsistent with
Dr. Donald's own opinions rendered in November 2016 that Plaintiff
could sit, stand, or walk for four hours in an eight-hour workday.
(Id. at 442-44).  Because Dr. Donald's opinions are inconsistent
with one another, as well as the medical record as a whole prior
to the date last insured, the ALJ had good cause to discredit his
opinions.

limitations. (Id. at 118). The medical evidence supports the ALJ's findings in this regard.

Finally, the record contains evidence related to Plaintiff's activities of daily living, which include taking care of her own personal needs, cooking simple meals, driving a car, shopping for groceries, going to church, attending school events, and handling her personal finances. (Doc. 13 at 217-20). In her Function Report dated April 18, 2015 (after the date last insured), Plaintiff further indicated that she does not use a cane. (Id. at 222). While there is no question that Plaintiff has the severe impairments of degenerative disc disease, left shoulder impingement, hypertension, Sjogren's syndrome, fibromyalgia, undifferentiated connective tissue disease, diabetes, obesity, depression, anxiety, and chronic pain syndrome (Doc. 13 at 17), the record supports the ALJ's determination that the severity of the limitations expressed in the opinions of Drs. Dees, Revels, Mims, Harrison, and Donald is inconsistent with the substantial medical evidence in this case *related to the period in question*, as detailed above. Therefore, the ALJ had good cause to discredit those opinions. Indeed, the medical evidence detailed above supports the ALJ's findings and the weight assigned to the opinion evidence proffered by Plaintiff's treating physicians. Accordingly, Plaintiff's claim must fail.

**C. Substantial evidence supports the Residual Functional Capacity for a range of light work with the stated restrictions.**

Last, Plaintiff argues that the ALJ'S RFC for a range of light work is not supported by substantial evidence because the ALJ failed to link the RFC assessment to the evidentiary record. (Doc. 14 at 17-20). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

Residual functional capacity (hereinafter "RFC") is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's RFC are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the plaintiff's RFC, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provide[d]

a sufficient rationale to link substantial record evidence to the legal conclusions reached." Boone v. Berryhill, 2019 U.S. Dist. LEXIS 74764, *14-15, 2019 WL 1983813, *5 (S.D. Ala. May 3, 2019)(citations and internal quotation marks omitted). However, "it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician," id., nor is there a "rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, [such as] where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." Packer v. Commissioner, Social Sec. Admin., 542 Fed. Appx. 890, 891-892 (11th Cir. 2013).

The Court finds, based on the extensive medical evidence detailed above, including the consistent opinion evidence of the State Agency reviewer, that substantial evidence supports the ALJ's finding that, during the period in question, Plaintiff had the RFC to perform a range of light work, with the stated restrictions. Indeed, Plaintiff has failed to show that any limitations caused by her impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions. The Court further finds that the ALJ provided a sufficient rationale to link the substantial record evidence related to the period in question to the RFC assessment. Accordingly, Plaintiff's claim must fail.

**VII.  <u>Conclusion</u>**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this **23rd** day of **August, 2019.**

<u>        /s/ SONJA F. BIVINS        </u>
**UNITED STATES MAGISTRATE JUDGE**